# UNITED STATES BANKRUPTCY COURT
# FOR THE EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| In re:<br><br>JUAN NELSON LAINES,<br><br>  Debtor. | Case No. 04-10020-RGM<br>(Chapter 7) |
| H. JASON GOLD, TRUSTEE,<br><br>  Complainant,<br><br>vs.<br><br>UNITED STATES OF AMERICA, *et als.*,<br><br>  Respondents. | Ad. Proc. No. 05-1343 |

## MEMORANDUM OPINION

This adversary proceeding is before the court on the trustee's motion for a default judgment as to Jose Donaldo Aguirre and Maximo Portillo. The trustee previously avoided the debtor's March 2001 transfers of two properties as fraudulent conveyances under §55-80 of the Code of Virginia (1950) as made applicable by Bankruptcy Code §544(a). Three individuals and three other entities docketed judgments, or in the case of the United States recorded notices of federal tax liens, in Fairfax County, Virginia, the situs of the two real properties in question. None was a party to the avoidance action and, consequently, their docketed judgments and notices of federal tax liens were not affected by the prior adjudication. This adversary proceeding addresses the status of the docketed judgments and the notices of federal tax liens. The trustee asserts that none constitutes a lien against the property. The present motion addresses only Aguirre's and Portillo's docketed judgments.

1

The trustee asserts that Aguirre's and Portillo's docketed judgments are not liens against the two properties because they do not attach to the properties.[1] One property, a townhouse, was purchased by the debtor on December 9, 1998. He conveyed it to himself and his wife as tenants by the entirety on March 26, 2001. On December 24, 2002, they conveyed the property to themselves and Miguel Perez as tenants in common. The other property, a single family residence, was purchased by the debtor on October 21, 2000. The debtor conveyed it to himself and his wife as tenants by the entirety on March 18, 2001. They conveyed it to the debtor's wife and Fidel Rovira on October 7, 2003. On December 23, 2003, Aguirre and Portillo docketed their judgments. The debtor filed his petition in bankruptcy on January 2, 2004. The March 2001 transfers were avoided on February 16, 2005, as fraudulent conveyances and the properties were recovered from the debtor's wife, Perez and Rovira under Bankruptcy Code §550. Neither Aguirre nor Portillo filed a response to the trustee's complaint.

The trustee argues that under Virginia law the docketed judgments do not attach to the properties.[2] Thus, if under Virginia law, the docketed judgments did not constitute liens against the

---

[1] The trustee sold the properties free and clear of all liens and potential liens under 11 U.S.C. §363(f). All liens were transferred to the proceeds of sale.

[2] The trustee notes that the avoided transactions are preserved for the benefit of the bankruptcy estate by §551 of the Bankruptcy Code and seems to suggest that the avoidance of a transaction coupled with the preservation of it for the benefit of the estate eliminates the transaction or effects the return of the transferred asset to the transferring party, here the debtor, as of the date of the avoided transfer, the same as if the avoided transfer had never taken place. The application of this analysis would automatically divest all of the transferee's subsequent purchasers and lienholders of their interests in the real property by removing the initial transferee from the chain of title. How this could be accomplished without the transferee's subsequent purchasers and lienholders being parties to the avoidance action and having the opportunity to defend the transaction is not clear. Nor is it clear why subsequent bona fide purchasers for value should be divested of their title to the property because a prior transaction was, unknown to them, tainted. The statutory scheme is to the contrary.

The Bankruptcy Code establishes several avoidable transactions. *See, e.g.,* Bankruptcy Code §§544, 545, 547, 548 and 553. Section 550 provides the trustee's recovery after a successful avoidance action. It allows recovery of the property or the value of the property. Bankruptcy Code §550(a). It also determines against whom the trustee may recover and the defenses available to those from whom the trustee seeks to recover. If the initial transferee retains the property, the trustee may recover the property. This is the most common situation and thus the avoidance and the

2

properties before the trustee avoided the March 2001 transactions, they do not become liens merely by the trustee's avoidance of the transactions. Conversely, if they constituted liens before the trustee avoided the March 2001 transactions on February 16, 2005, they remain liens enforceable against the trustee and the bankruptcy estate. *Retail Clerks Welfare Trust v. McCarty (In re Van de Kamp's Dutch Bakeries),* 908 F.2d 517, 519 (9th Cir. 1990) ("Appellants correctly note that the court must refer to state law to determine the relative priorities of competing liens."); *Matter of DeLancey,* 94 B.R. 311, 313 (Bankr.S.D.N.Y. 1988).

---

recovery, two separate steps, are seemingly conflated into a single step.

Section 551 is relevant only where there is a transaction subsequent to the avoided transaction. This may be a subsequent conveyance or a subsequent lien. If the avoided transaction is a fraudulent lien, a subsequent good faith lender secured by the property would be promoted to first priority position if the avoided transaction were eliminated. The bankruptcy estate would not benefit from the avoidance and the subordinate lender would receive a windfall in its new, higher priority. Section 551 prevents this unintended result and makes clear that an avoided transaction is not eliminated but rather is preserved for the benefit of the estate. *Matter of DeLancey,* 94 B.R. 311, 313 (Bankr.S.D.N.Y. 1988). The transaction remains, but the benefit flows to the bankruptcy estate in the same priority as at state law. *Id.* ("Thus, when under state law, the avoided lien which is sought to be preserved is inferior to subsequent valid liens, the inferior lien cannot be enhanced by its preservation under 11 U.S.C. § 551. If the avoided lien will sink below other liens against the estate, the trustee who stands in the shoes of the inferior avoided lien will likewise sink while in those shoes. . . .").

A common example is a fraudulent first trust on real estate followed by a legitimate second trust. The first trust is avoided, but not eliminated. Section 551 preserves the first trust and prevents the second trust from moving to first priority. When the property is sold, the note secured by the first trust will be paid before the second trust note because the first trust was preserved under §551. If the first trust note is held by the initial transferee, the trustee will be entitled to the payment at closing under §550(a). If the first trust note was sold, the trustee may or may not receive the payment at closing. It depends on the application of §550(b) as to the subsequent note purchaser. If the subsequent noteholder is a bona fide purchaser for value without knowledge of the voidability of the avoided transfer, the noteholder will receive the payment at closing, not the trustee. The trustee may, however, recover the *value* of the property – that is, the amount of the payoff – from the initial transferee; but he will not recover the payoff itself from the subsequent good faith noteholder.

In this case, the trustee avoided the two March 2001 transfers but not the two later transfers. He recovered the property from the transferees, the debtor's wife, Rovira and Perez, under Bankruptcy Code §550. Aguirre and Portillo were not parties to the avoidance action and no recovery was made against them. In this adversary proceeding, the trustee only seeks to declare that their docketed judgments do not create liens against the two properties. The issues raised are the same as if a quiet title action had been brought in state court. This adversary proceeding is not an action under Bankruptcy Code §550 to effect a recover of property or the value of property from any of the defendants. Nor is it an action to avoid a transaction under §544, 545, 547, 548, 553 of the Bankruptcy Code.

3

The Virginia Supreme Court succinctly stated the law in *Tucker v. Foster,* 154 Va. 182, 192-193, 152 S.E. 376, 379 (1930):

> When a judgment has been rendered and duly docketed the effect thereof is to impose a lien both upon the real estate then held by the judgment debtor and also upon any that he may have theretofore conveyed away in fraud of such judgment creditor after his debt was contracted and before judgment rendered, subject of course in the latter case to the superior equities of bona fide purchasers for value and without notice. Sections 6470 and 6471, Code of Virginia

(citations omitted.).[3]

The trustee is correct under the first prong of the *Tucker* rule as to the single family residence. The debtor did not own the home when Aguirre and Portillo docketed their judgments on December 23, 2003. It was owned by the debtor's wife and Rovira. The trustee is partially correct as to the townhouse. He alleges in his complaint that the debtor owned a one-third interest in the townhouse when the judgments were docketed. Aguirre's and Portillo's judgment liens attached to this interest but not to the interests owned by the debtor's wife and Perez. Va.Code (1950) §8.01-458. The trustee's avoidance of the March 2001 transactions and the application of §551 do not change these results. Even though the March 2001 transactions were avoided by the trustee, Aguirre's and Portillo's docketed judgments were not avoided. Their liens on the townhouse remain intact until they are avoided.[4]

The second prong of the *Tucker* rule requires further examination. The docketed judgments could also be liens against the single family residence if the debtor conveyed the residence "in fraud

---

[3]Section 6470 of the Code of Virginia (1919) is currently §§8.01-458 of the Code of Virginia (1950).

[4]The transactions that must be avoided are the attachment of Aguirre's and Portillo's liens which occurred on December 23, 2003. It is possible that the attachment of the liens, which occurred 10 days before the debtor filed bankruptcy, are avoidable preferences under §547. The present action does not seek to avoid the attachment of the liens as preferences but seeks to declare that they did not attach in the first instance.

of such judgment creditor after his debt was contracted and before judgment rendered." *Id.* The fact that the March 2001 transfers were fraudulent conveyances does not bring Aguirre and Portillo within the parameters of *Tucker's* second rule. Aguirre's and Portillo's debts must have been contracted before the fraudulent conveyance, that is before March 18, 2001.

The court cannot determine from the record when the debtor incurred the obligations. All that can be gleaned from the record is that both Aguirre's and Portillo's judgments are for unpaid wages; that Aguirre's judgment is for $966.00; that Portillo's is for $1,392.00; and that the judgments were docketed on December 23, 2003. Neither filed a proof of claim. The debts would have had to have been incurred before March 18, 2001 when the debtor transferred the home from himself to himself and his wife as tenants by the entirety for the second prong of the *Tucker* rule to apply.[5] The trustee's complaint is sufficient on its face to entitle the trustee to the relief requested as to the residence, that is, a determination that Aguirre's and Portillo's docketed judgments do not attach to the single family residence and are not liens against it. Without a response from Aguirre and Portillo, the court cannot assume that they have a valid defense, that is, that their obligations were incurred before March 18, 2001.

The motion for default judgment will be granted as to the single family home but will be denied as to the townhouse.

Alexandria, Virginia

---

[5] The October 7, 2003 transfer of the home is not the critical transfer. It has not been determined to have been a fraudulent transfer. Moreover, it was a transfer from the debtor and his wife as tenants by the entirety to the debtor's wife and Rovira. Even if the debts were incurred shortly before October 7, 2003, the later docketed judgments would not attach to the home because the judgments were against only one of the tenants by the entirety. *Rogers v. Rogers,* 257 Va. 323, 326, 512 S.E.2d 821, 822 (1999) ( "[R]eal property held as tenants by the entireties is exempt from the claims of creditors who do not have joint judgments against the husband and wife."); *Vasilion v. Vasilion,* 192 Va. 735, 740, 66 S.E.2d 599, 602 (1951) ("It follows that the entirety is liable for the joint debts of both spouses and is reachable against them by proper process . . . But where a tenancy by the entirety in the fee simple is once created the property is completely immune from the claims of creditors against either husband or wife alone.").

January 6, 2006

      /s/ Robert G. Mayer
      Robert G. Mayer
      United States Bankruptcy Judge

copies to:

Joel S. Aronson
Steven B. Ramsdell
Christopher L. Rogan

Maximo Portillo
423 Arkansas Street
Herndon, Virginia 20170

Jose Donaldo Aguirre
1257 Elden Street, Apt. 304
Herndon, Virginia 20170

James M. Knoepp
Virginia Justice Center for Farm and Immigrant Workers
6066 Leesburg Pike, Suite 520
Falls Church, Virginia 22041-2222


12612