# UNITED STATES BANKRUPTCY COURT
# FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| In re:<br><br>JUAN NELSON LAINES,<br><br>    Debtor. | Case No.  04-10020-RGM<br>(Chapter 7) |
| H. JASON GOLD, TRUSTEE,<br><br>    Plaintiff,<br><br>vs.<br><br>UNITED STATES OF AMERICA, *et al.,*<br><br>    Defendants. | Adv. Proc. No. 05-1343 |

## MEMORANDUM OPINION

This case is before the court on the motion of St. Anna's Home, Inc., to dismiss the amended complaint as to it for failure to state a claim upon which relief can be granted.  F.R.Bankr.P. 7012(b) incorporating F.R.Civ.P. 12(b)(6).

## Applicable Standard

The Court of Appeals for the Fourth Circuit set out the standard for determining whether a complaint states a sufficient cause of action.  It stated:

> The purpose of a Rule 12(b)(6) motion is to test the sufficiency of a complaint; "importantly, [a Rule 12(b)(6) motion] does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party v. Martin,* 980 F.2d 943, 952 (4th Cir.1992).  Accordingly, a Rule 12(b)(6) motion should only be granted if, after accepting all well-pleaded allegations in the plaintiff's complaint as true and drawing all reasonable factual

1

> inferences from those facts in the plaintiff's favor, it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief. *See id. . . .* We do note, however, that for purposes of Rule 12(b)(6), we are not required to accept as true the legal conclusions set forth in a plaintiff's complaint. *See District 28, United Mine Workers of Am., Inc. v. Wellmore Coal Corp.,* 609 F.2d 1083,1085 (4th Cir.1979).

*Edwards v. City of Goldsboro,* 178 F.3d 231, 243-244 (4th Cir. 1999).

## Factual Allegations

This case, as set out in the trustee's complaint, involves the transfer of two properties, one a townhouse; the other, a single-family detached house. The transactions relevant to this motion are:

| Date | Property | Transaction |
|---|---|---|
| 12/ 9/1998 | Townhouse | Debtor purchases townhouse; property is titled in debtor's individual name |
| 10/21/2000 | House | Debtor purchases house; property is titled in debtor's individual name |
| 3/18/2001 | House | Debtor conveys house to his wife and himself as tenants by the entirety |
| 3/26/2001 | Townhouse | Debtor conveys townhouse to his wife and himself as tenants by the entirety |
| 11/29/2001 | | St. Anna's Home dockets judgment |
| 12/24/2002 | Townhouse | Debtor and his wife convey the townhouse to the debtor, his wife and Miguel Perez |
| 10/ 7/2003 | House | Debtor and his wife convey the house to his wife and Fidel Rovira |
| 1/ 2/2004 | | Debtor files chapter 7 petition in bankruptcy |

The trustee successfully avoided the March 18, 2001 and March 26, 2001 transfers of the house and the townhouse as fraudulent conveyances pursuant to Bankruptcy Code §544(a) which

applied Va.Code (1950) §55-80. The trustee recovered the properties from the debtor's wife, Perez and Rovira and sold them free and clear of liens with the liens attaching to the proceeds of the sales. Bankruptcy Code §363(f). St. Anna's was not a party to the fraudulent conveyance action and its lien, if any, was unaffected by it and transferred to the proceeds of sale.

## Positions of the Parties

The trustee seeks avoidance of St. Anna's ostensive lien or declaration that no lien attached in the first instance.[1] He reasons that the avoided transfers were preserved for the benefit of the estate. Bankruptcy Code §551. Thus, he succeeded to the position of the transferees or was substituted for the transferees of the avoided transfers as of March 18 and 26, 2001, the dates of the avoided transfers, and was, as of January 4, 2004, the date the debtor filed his petition, the owner of the properties. Under Bankruptcy Code §544(a)(3) a trustee has all of the rights and powers of a bona fide purchaser of real property as of the date of the filing of the petition. He concludes that "Section 551, when read in conjunction with section 544(a)(3)" cuts off St. Anna's subsequent rights.

St. Anna's disagrees. It asserts that §551 is irrelevant. Section 551 only preserves the avoided transaction without changing the transaction[2] and provides no independent basis for the trustee to avoid its judgment lien. Sections 544(a)(1) and (2) are of no assistance to the trustee

---

[1] Three other parties docketed judgments after St. Anna's docketed its judgment and before the debtor filed bankruptcy. Additionally, the United States docketed a restitution judgment and a fifth party recorded a deed of trust after the filing of the petition. None were joined as parties to the fraudulent conveyance action. The trustee could not have joined the United States or the trust holder because the United States docketed its judgment and the trust holder recorded its deed of trust after the trustee filed his fraudulent conveyance suit. All are parties to this suit but none of the facts relating to their transactions are relevant to St. Anna's motion.

[2] Section 551 redirects the benefits of the transaction from the transferee of the avoided transaction to the estate.

because St. Anna's lien was docketed well before the commencement of the case. Section 544(a)(3), the trustee's rights and powers as a hypothetical bona fide purchaser for value and without notice, is not helpful. The trustee only succeeded to the debtor's ownership as of the commencement of the case and the debtor was the record owner of only a one-third interest in the townhouse on that date. Thus, §544(a)(3) is applicable, at most, to this one-third interest. However, there was nothing for the trustee's right to affect. St. Anna's judgment lien was duly docketed on that date. There was nothing unperfected or unrecorded that a bona fide purchaser for value would have taken free of as of the commencement of the case. Bankruptcy Code §544(a)(3). St. Anna's concludes that the trustee stated no basis for avoiding its lien or for challenging its lien's validity.

## Discussion

What was St. Anna's lien position as of January 4, 2004, the date the petition in bankruptcy was filed? Accepting the trustee's well-pled allegations, without an avoidance action, St. Anna's had a judgment lien against the debtor's one-third interest in the townhouse. The debtor conveyed the townhouse from himself to his wife and himself as tenants by the entirety on March 26, 2001. St. Anna's docketed its judgment on November 29, 2001. At that time, the debtor had no individual interest in the townhouse and the judgment lien did not attach. A duly docketed judgment against one tenant by the entirety is not a lien on tenants by the entirety property. *See Bunker v. Peyton (In re Bunker)*, 312 F.3d 145 (4th Cir. 2002); *Williams v. Peyton (In re Williams)*, 104 F.3d 688 (4th Cir. 1997); *Sumy v. Schlosberg (In re Sumy)*, 777 F.2d 921, 924-925 (4th Cir. 1985); *Oliver v. Givens*, 129 S.E.2d 661, 663 (1963); *Vasilion v. Vasilion*, 192 Va. 735, 740, 66 S.E.2d 599, 602 (1951). On December 24, 2002, the debtor and his wife conveyed the townhouse to themselves and Perez as

tenants in common.[3]  St. Anna's judgment lien attached to the debtor's one-third interest upon this conveyance.  There were no further conveyances.

The house followed a similar, but not identical course.  The debtor conveyed the house from himself to his wife and himself as tenants by the entirety on March 18, 2001.  Just as with the townhouse, St. Anna's judgment which was only against the debtor did not attach to the tenants by the entirety property when the judgment was docketed on November 29, 2001.  The debtor and his wife also conveyed the house.  However, instead of the debtor retaining any interest as he did with the townhouse, the house was conveyed to his wife and Rovira.  There were no further conveyances.  Consequently, St. Anna's judgment never attached to the house.  *See Pitts v. United States,* 242 Va. 254, 408 S.E.2d 901 (1999); *Oliver v. Givens,* 204 Va. 123, 129 S.E.2d 661 (1963); *Vasilion v. Vasilion,* 192 Va. 735, 66 S.E.2d 599 (1951).

The trustee's complaint, thus seeks to avoid the judgment lien against the one-third interest in the townhouse and to determine that the judgment lien did not attach to the house.

The trustee relies principally on Bankruptcy Code §551.  Section 551 preserves avoided transactions for the benefit of the bankruptcy estate.  While automatically applicable to all avoided transactions, §551 is relevant only where there is a transaction subsequent to the avoided transaction.  If there is no subsequent transaction, the result as to the trustee is the same.  However, if there is a subsequent transaction, the trustee is faced with a potentially competing interest such as a subsequent grantee or a subsequent lienholder.  Section 551 addresses the competition and, essentially, enables the trustee to always prevail.

---

[3]The complaint does not allege that there was any survivorship among the three grantees.  The resulting tenancy would be different if there were a right of survivorship.  *See In re Sampath,* 314 B.R. 73 (Bankr.E.D.Va. 2004).

The operation of §551 is best explained by the example of real property encumbered by a first and a second deed of trust which exceed the value of the real property. The first trust is avoided as a fraudulent transfer. Without §551, the fraudulent first trust would be void and of no force or effect. It would be as if the fraudulent trust had never existed. This is an entirely reasonable result in a non-bankruptcy fraudulent conveyance action. By eliminating the fraudulent first trust from the chain of title, the plaintiff – a subsequent lienholder or an unsecured creditor – is put in the position that he ought to have been, had there been no fraud. The same result is not necessarily appropriate in bankruptcy. In bankruptcy, the trustee principally represents all of the unsecured creditors. If he successfully avoids the fraudulent first trust and it is eliminated from the chain of title, the second trust would be promoted to first priority. The trustholder would benefit by the trustee's avoidance action, and would receive a windfall in his new, higher priority because he was not fully secured. The unsecured creditors, the trustee's principal constituency, will not be assisted by the favorable result in the avoidance action that was undertaken for their benefit. Section 551 prevents this unintended result and makes clear that an avoided transaction is not eliminated, but, rather, is preserved for the benefit of the estate. *In re Bell,* 194 B.R. 192, 197 (Bankr.S.D.Ill. 1996) ("While lien avoidance under §544(a) renders a security transaction ineffective as between the parties, the avoided lien does not simply vanish but is preserved for the benefit of the estate"); *In re Price,* 97 B.R. 264, 266 (Bankr.E.D.N.C. 1989) ("What then is the effect of avoiding Southern's lien on the second deed of trust held by Planters? According to Planters, the second lien moves into first position. That, however, is not so. The avoided lien is preserved for the benefit of the estate pursuant to 11 U.S.C. §551.") The transaction remains, but the benefit flows not to the transferee of the avoided transaction, but to the bankruptcy estate. The estate, not the subsequent transferee,

benefits from the avoidance. *In re Bell,* 194 B.R. at 197 ("Thus, when under state law, the avoided lien which is sought to be preserved is inferior to subsequent valid liens, the inferior lien cannot be enhanced by its preservation under 11 U.S.C. § 551. If the avoided lien will sink below other liens against the estate, the trustee who stands in the shoes of the inferior avoided lien will likewise sink while in those shoes. . ."). In the example, the fraudulent first trust is avoided, but not eliminated. Section 551 preserves the first trust and prevents the second trust from moving up to first priority. *See* H.R.Rep. No. 95-595, 95th Cong., 1st Sess. 376 (1977); S.Rep. No. 95-989, 95th Cong., 2d Sess. 91 (1978), U.S.Code Cong. & Admin.News 1978, pp. 5787, 5877, 6332 ("The section as a whole prevents junior lienors from improving their position at the expense of the estate when a senior lien is avoided."). When the property is sold, the note secured by the first trust will be paid before the second trust note because the first trust was preserved under §551. But, it will be paid to the trustee, not to the noteholder.[4]

The application of §551 is not as intuitive when a transfer of real property is involved. The problem – who is to benefit from the avoidance – is the same. In this case, the house was owned by the debtor before the March 18, 2001 fraudulent transfer. If the March 18, 2001 transfer were entirely eliminated from the chain of title, then St. Anna's judgment lien would have attached when it was docketed on November 29, 2001.[5] Thus, without §551, avoiding the March 18, 2001 transfer, is a windfall for St. Anna's. St. Anna's would have the benefit of a judgment lien that it would not

---

[4]This assumes that the trustee effects a recovery under Bankruptcy Code §550.

[5]The second transfer, from the debtor and his wife to the debtor's wife and Rovira, occurred after the judgment was docketed. Under this analysis, assuming the validity of the second transaction, the house would be transferred to the debtor's wife and Rovira subject to St. Anna's existing judgment lien.

otherwise enjoy.[6] By preserving the transaction for the benefit of the estate under §551, the benefit of avoiding the transaction flows to the estate, not St. Anna's. St. Anna's judgment lien never attaches to the house.

Similarly, if the March 26, 2001 fraudulent transfer of the townhouse were eliminated from the chain of title, the townhouse would remain in the debtor's sole name and St. Anna's judgment lien would have attached to the entire property on November 29, 2001, not merely the debtor's one-third interest that he held as of the commencement of the case.[7] Again, the application of §551 preserves the avoided March 26, 2001 transfer for the benefit of the estate and prevents this result.

The statutory scheme is different than envisioned by the trustee. Effective avoidance by a trustee is a two-step process. *In re Morgan,* 276 B.R. 785, 790 (Bankr.N.D.Ohio 2001) ("[T]he concepts of 'avoidability' and 'recovery' are distinct concepts completely separate and independent from one another"). First, the trustee must avoid the transaction, then he must effect a recovery. Sections 544, 545, 547, 548, 549, 553(b) and 724(a) of the Bankruptcy Code provide the trustee statutory authority to avoid transfers. Section 550 provides the trustee remedies if a transfer is avoided.[8]

Section 551 has nothing to do with whether a transfer may be avoided or with the remedy if a transfer is avoided. It is neither a basis for avoiding a transfer nor a remedy. It only answers the question of who – as between the trustee and subsequent transferees – benefits from a successful

---

[6]*But see Tucker v. Foster,* 154 Va. 182, 192-193, 152 S.E. 376, 379 (1930).

[7]As with the house, the second transfer of the townhouse did not occur until after St. Anna's docketed its judgment. If the December 24, 2002 transfer was valid, it would also have been made subject to St. Anna's judgment lien.

[8]Section 550 establishes both the liability and defenses of transferees. Among other provisions, it distinguishes between initial and subsequent transferees, providing different protections for different types of transferees.

avoidance action. It resolves that question in favor of the trustee and prevents subsequent transferees or other parties from benefitting from the trustee's avoidance action at the estate's expense.[9]

Section 551 merely maintains the status quo as to subsequent transactions when a trustee avoids a prior transaction. No additional benefits are conferred on the parties involved in the subsequent transactions and they suffer no detriment by the avoidance of the prior transfer. They remain in the same position as if the prior transfer were unaffected. *See In re Appalachian Energy Industries, Inc.,* 25 B.R. 515, 517 (Bankr.M.D.Tenn.1982) ("[P]reservation of a lien cannot enhance the priority of the avoided lien . . . [T]he trustee who avoids and then preserves the lien of a creditor cannot acquire greater rights in the property than those to which he has succeeded.").

Nor does the application of Bankruptcy Code §544(a)(3), either alone or in conjunction with §551, assist the trustee. Accepting the trustee's well-pled allegations as true, §544(a)(3) is not applicable. Section 544 speaks as of the commencement of the case. At that time, St. Anna's held a docketed judgment lien against the debtor's one-third interest in the townhouse. If a bona fide purchaser for value had purchased the townhouse when the debtor filed his petition, he would have been subordinate to St. Anna's judgment lien on the debtor's one-third interest in the townhouse. The trustee can rise no higher than a hypothetical bona fide purchaser for value and cannot avoid St. Anna's judgment lien.

---

[9] If the trustee's argument as to §551 were correct, §551 would itself become an avoidance provision. But, there would be no remedy or recovery because it is not included in the predicate avoidance provisions of §550(a).

**Conclusion**

The trustee avoided the two March 2001 transfers but not the two later transfers. He recovered the property from the transferees – the debtor's wife, Rovira and Perez – under Bankruptcy Code §550. St. Anna's was not a party to the avoidance action. No recovery was sought or obtained against it in that action. This complaint does not state an action to avoid St. Anna's judgment lien or to effect a recovery of property or the value of property under §550 as to St. Anna's.

The complaint does, however, state an action to determine the extent and priority of St. Anna's liens on the properties sold. The trustee argues, after having set out the transactions, that under Virginia law St. Anna's docketed judgment lien does not create liens that attach to the properties. St. Anna's contests the trustee's assertion. The complaint raises the issue of the extent of St. Anna's lien. In Virginia, a docketed judgment lien may relate back to a point in time before it is docketed. *Tucker v. Foster,* 154 Va. 182, 192-193, 152 S.E. 376, 379 (1930) ("When a judgment has been rendered and duly docketed the effect thereof is to impose a lien both upon the real estate then held by the judgment debtor and also upon any that he may have theretofore conveyed away in fraud of such judgment creditor after his debt was contracted and before judgment rendered, subject of course in the latter case to the superior equities of bona fide purchasers for value and without notice.").[10] While St. Anna's lien attaches only to the debtor's one-third interest in the townhouse under the first prong of the *Tucker* rule, its lien may attach to more under the second prong.

---

[10]*Tucker v. Foster* was decided under §6470 of the Code of Virginia (1919) which is currently §8.01-458 of the Code of Virginia (1950).

The complaint makes sufficient allegations to raise the issue of the extent and priority of St. Anna's lien or liens, a matter that must be resolved without the use of the trustee's avoidance powers. No avoidance or recovery action is stated. The motion to dismiss will be denied.

Alexandria, Virginia
February 22, 2006

/s/ Robert G. Mayer
Robert G. Mayer
United States Bankruptcy Judge

copies to:

Joel S. Aronson
Steven B. Ramsdell
Christopher L. Rogan
Robert K. Coulter
Douglas Mataconis

Jose Donald Aguirre
1257 Eldon Street, Apt. 304
Herndon, Virginia 20170

Maximo Portillo
423 Arkansas Street
Herndon, Virginia 20170

12696